KSC/08.17.24

COG: USAO 2021R00271



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. CDA-24-0279 |
| v. | * | |
| | * | Misbranding of Drugs, 21 U.S.C. §§ 331(a), |
| | * | 333(a)(1), 352(f)(1); |
| | * | Forfeiture, 21 U.S.C. §§ 334(a) and 853(p), |
| | * | 28 § USC 2461(c)) |
| CAROL D. SWANDBY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*******

## INFORMATION

The United States Attorney for the District of Maryland charges that:

1. Defendant Carol D. Swandby ("SWANDBY") is a veterinarian in the State of Maryland. Pharmequine.com was an internet pharmacy website that marketed prescription-only animal drugs. Pharmequine.com was operated by SWANDBY. The Gray Horse was a corporation with its principal place of business in Frederick, Maryland. Pharmequine.com listed its registrant as Gray Horse, Inc and SWANDBY operated Pharmequine.com.

2. The Food and Drug Administration ("FDA") of the United States Department of Health and Human Services regulates the distribution and labeling of all drugs, including animal drugs, shipped or received in interstate commerce through enforcement of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 301, *et seq.* ("FDCA"). Veterinary prescription drugs are drugs intended for use by animals that, because of their toxicity or other potentiality for harmful effect, or the method of their use, or the collateral measures necessary for their use, are not safe for animal use except under the professional supervision of a licensed veterinarian. 21 U.S.C. § 353(f)(1)(A).

3. Under the FDCA, a drug is misbranded if, among other things, its labeling does not bear "adequate directions for use." 21 U.S.C. § 352(f)(1). Adequate directions for use is defined as "directions under which the layman can use a drug safely and for the purposes for which it is intended." 21 C.F.R § 201.5. Prescription veterinary drugs by definition can only safely be used under the professional supervision of a licensed veterinarian and therefore they must qualify for an exemption to this requirement in order to move in interstate commerce. These exemptions are set out in 21 C.F.R. Part 201, Subpart D ("Exemptions from Adequate Directions for Use").

4. Veterinary prescription drugs are exempt from the requirement that their labeling contain adequate directions for use if they meet all enumerated conditions, including that they be distributed through a closed supply chain in which every entity that possesses a prescription drug must have legal authorization to do so. *See* 21 C.F.R. § 201.105(a)(1) (a veterinary prescription drug must be in possession of: a person lawfully engaged in the manufacture, transportation, storage, or wholesale distribution of drugs; or a licensed veterinarian for use in the course of his professional practice.) Moreover, the veterinary prescription drug must be dispensed in accordance with 21 U.S.C. § 353(f), i.e., pursuant to a lawful order of a licensed veterinarian in the course of the veterinarian's professional practice. 21 U.S.C. § 353(f)(1) and 21 C.F.R. § 201.105(a)(2).

5. The FDCA's restrictions on veterinary prescription drugs are not primarily to protect animals from the potential harms of prescription drugs, but are to protect the human food supply from unsafe drug residues in the edible tissues of animals sold for slaughter. Common causes of illegal residues include: (1) exceeding the drug's approved dose; (2) using a shorter withdrawal period than what is stated on the drug's label (if a higher than approved dose is given, the labeled withdrawal period may not be enough to allow the drug in the edible tissues to deplete

to levels that are at or below the tolerance); (3) using a drug in an extra-label manner (for indications and dosages outside the approved labeling) without a veterinarian's involvement; (4) giving a drug not approved for that species; and (5) using an unapproved route of administration. Drug residues in the nation's drug supply are concerning because: (1) they may contribute to antibiotic resistance in the human population, rendering human drugs less effective to treat human disease and contributing to the mutations of "superbugs"; and (2) they may cause allergic reactions in individuals with certain drug allergies.

6. From 2019 through 2022, SWANDBY was a licensed veterinarian in Maryland, New York and Kentucky. SWANDBY, however, never possessed a license in any state to conduct the wholesale distribution of prescription drugs. Furthermore, she never possessed a valid pharmacy license in any state.

7. From 2019 through 2022, through Gray Horse Inc. and Pharmequine.com, SWANDBY distributed veterinary prescription drugs outside her professional practice. In other words, SWANDBY distributed veterinary prescription drugs to animals in which she did not have a legitimate veterinary-patient relationship. During these years, SWANDBY distributed veterinary prescription drugs to customers in Maryland, Virginia, North Carolina, Louisiana, Florida, West Virginia, Idaho, Illinois, Ohio, Nevada, Missouri, Utah, Texas, Washington, Arizona, South Carolina, and California.

8. All these veterinary prescription drugs distributed by SWANDBY through Gray Horse Inc. and Pharmequine.com were misbranded because SWANDBY did not have a veterinary-patient relationship with any of these customers.

9. From the illegal shipments from Pharmequine.com, SWANDBY received at least $277,032.79 by unlawfully distributing veterinary prescription drugs.

## COUNT ONE

### Introduction of Misbranded Drugs into Interstate Commerce
### 21 U.S.C. §§ 331(a), 333(a)(1), and 352(f)(1)

The United States Attorney for the District of Maryland further charges that:

10. The information in paragraphs 1 through 9 is realleged and incorporated by reference into this Count.

11. In September 2019, in the District of Maryland, using Gray Horse, Inc. through Pharmequine.com, the Defendant,

**CAROL SWANDBY**

introduced and delivered for introduction, and caused the introduction and delivery for introduction, into interstate commerce, of veterinary prescription drugs, specifically Ventipulmin syrup 100 ml, a veterinary prescription drug used to treat respiratory disease, that were misbranded in that drugs' labeling did not bear adequate directions for the use of such drugs.

Since these veterinary prescription drugs were not lawfully distributed or prescribed, they failed to qualify for the exemption from the requirement that they bear labeling containing directions for lay use.

21 U.S.C. § 331(a)
21 U.S.C. § 333(a)(1)
21 U.S.C. § 352(f)(1)

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further charges that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 21 U.S.C. §§ 334(a) and 853(p) and 28 § U.S.C. § 2461(c), in the event of the defendant's conviction under Count One of this Information.

2. Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States, pursuant to 21 U.S.C. § 334(a), any article of food, drug, or cosmetic that was adulterated or misbranded when introduced into or while in interstate commerce or while held for sale after shipment in interstate commerce, or a sum of money representing the value of such adulterated and/or misbranded food, drugs, or cosmetics.

3. The property to be forfeited includes, but is not limited to, a money judgment of at least $277,032.

### Substitute Property

4. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

21 U.S.C. § 334(a)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_____  
Date

*Erek L. Barron*  
_____  
Erek L. Barron  
United States Attorney

Digitally signed by CHRISTINE GOO
Date: 2024.09.25 10:49:30 -04'00'